UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| PALAS MITCHELL and JOHN MITCHELL | PLAINTIFFS |
| V. | CIVIL ACTION NO. 3:16-CV-814-DPJ-FKB |
| CENLAR CAPITAL CORPORATION d/b/a CENLAR FEDERAL SAVINGS BANK d/b/a CENTRAL LOAN ADMINISTRATION & REPORTING and MGC MORTGAGE, INC. | DEFENDANTS |

ORDER

This contract dispute is before the Court on Plaintiffs Palas and John Mitchell's Motion for Reconsideration [120] of United States District Judge William H. Barbour, Jr.'s September 26, 2018 Order [111]. Defendants Cenlar Federal Savings Bank ("Cenlar") and MGC Mortgage, Inc.'s ("MGC" collectively "Defendants") have also moved for summary judgment [114]. For the following reasons, Plaintiffs' motion is granted in part and denied in part. Defendants' motion is terminated for the Court to adopt a new briefing schedule.

I.  Background

Substantively, this case examines whether Defendants breached their contract with Plaintiffs in three separate instances. In each, Defendants, acting as loan servicers, sent Plaintiffs' mortgaged-property insurers letters informing them that foreclosure proceedings "had commenced" on the insured/mortgaged property, which resulted in two of the insurers cancelling Plaintiffs' policies. *See*, *e.g.*, Shelter Letter [114-2] at 30.

The facts begin in 2005 when Plaintiffs received a loan secured by their property located in Richland, Mississippi. Defendants serviced the loan. Plaintiffs defaulted in 2011 and Defendants sent the first letter to Alfa Mutual Insurance Company ("Alfa"). Alfa then terminated Plaintiffs' insurance. Following that, Defendants purchased a force-placed insurance

policy on Plaintiffs' property through American Security Insurance Company ("American Security"). Once that policy expired, Plaintiffs insured the property through State Farm.

Defendants again commenced foreclosure proceedings on the property in November 2014 and sent the second disputed letter, this time to State Farm. Like Alfa, State Farm terminated Plaintiffs' insurance, and Plaintiffs then bought insurance through Shelter Mutual Insurance Company ("Shelter"). Defendants sent the third letter to Shelter in 2015 after Plaintiffs' default continued. But Shelter did not terminate Plaintiffs' insurance until 2016 when Plaintiffs failed to make timely payments on the Shelter policy. Again, Defendants force-placed coverage, this time for a two-month period, until Plaintiffs made their payments and Shelter re-instituted the policy.

Aggrieved, Plaintiffs filed their Complaint on October 17, 2016, alleging that Defendants, among other things, breached the loan agreement by sending the three letters which led their insurers to cancel their policies. Before leaving the bench, Judge Barbour held that Plaintiffs were judicially estopped from pursuing certain claims. Sept. 26, 2018 Order [111] at 6. Then, following reassignment, Plaintiffs sought reconsideration under Federal Rule of Civil Procedure 60(b), and Defendants responded that Plaintiffs failed to meet Rule 60(b)'s procedural requirements. But because Judge Barbour's order was interlocutory, the parties should have addressed it under Rule 54(b). Accordingly, the Court held a status conference and instructed Defendants to file a substantive response under Rule 54(b), which they did. Plaintiffs failed to file a timely response.[1] In addition, Defendants have moved for summary judgment.

II.     Plaintiffs' Motion for Reconsideration

Under Rule 54(b), a district court may "reconsider and reverse its decision for any reason it deems sufficient." *McClendon v. United States*, 892 F.3d 775, 781 (5th Cir. 2018) (holding

---

[1] The Court denied Plaintiffs' late motions for an extension of time. Order [129].

that failing to apply Rule 54(b) standard to motion to reconsider interlocutory order creates reversible error) (citation omitted). Accordingly, the Court has discretion to consider the legal issues de novo. *See also Galvan v. Norberg*, 678 F.3d 581, 588 (7th Cir. 2012) (finding reassigned judge properly reconsidered order issued by first judge under Rule 54(b)).

Here, Plaintiffs generally say Judge Barbour misapplied judicial estoppel as it relates to their two bankruptcy proceedings. On January 6, 2012, Plaintiffs filed a Chapter 13 Petition for Relief, and the United States Bankruptcy Court for the Southern District of Mississippi ("bankruptcy court") confirmed the plan on May 30, 2012. *See In re Mitchell*, No. 12-45-ee (Bankr. S.D. Miss.) ("Mitchell I"). But Plaintiffs failed to disclose any potential civil claims before the bankruptcy court dismissed the case on September 18, 2014. Sept. 26, 2018 Order [111] at 2. They then filed a second Chapter 13 petition in bankruptcy ("Mitchell II") on March 11, 2015, and again failed to disclose their claims. *Id.*

Judge Barbour found that before the plan was confirmed Plaintiffs had knowledge of the events surrounding Defendants' first letter to their insurer. *Id.* at 5. Accordingly, Judge Barbour held that "[b]ecause the Mitchells did not disclose their breach of contract and fraud claims to the bankruptcy court in Mitchell I, those claims remain property of [the Mitchell I estate], and cannot be pursued here." *Id.* This precluded Plaintiffs from "proceed[ing] on their fraud claim or their breach of contract claims arising from any event taken before September 18, 2014," the day Mitchell I was dismissed. *Id.* at 6. But because Mitchell II was still pending, Judge Barbour allowed Plaintiffs to amend their schedules to disclose breach-of-contract claims accruing after Mitchell I was dismissed. *Id.* at 6.

Plaintiffs ask this Court to set aside that holding for two reasons. First, they say it was unreasonable for Judge Barbour to expect them "to be aware that they had specific causes of

3

action . . . during the pendency of Mitchell I." Pls.' Mem. [121] at 1 (font altered). Next, Plaintiffs say Judge Barbour's Order made a "clear mistake" by holding that the precluded claims were property of the Mitchell I estate that is now closed. *Id.* at 3. Specifically, Plaintiffs argue that "any potential claims held as property of the Mitchell I estate reverted back to the Plaintiffs" under 11 U.S.C. § 349(b)(3). *Id.* at 2. Plaintiffs are partially correct.

First, Judge Barbour correctly applied judicial estoppel. "A court should apply judicial estoppel if (1) the position of the party against which estoppel is sought is plainly inconsistent with its prior legal position; (2) the party against which estoppel is sought convinced a court to accept the prior position; and (3) the party did not act inadvertently." *Jethroe v. Omnova Sols., Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) (citing *In re Coastal Plains, Inc.*, 179 F.3d 197, 206–07 (5th Cir. 1999)). "Judicial estoppel is particularly appropriate where, as here, a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." *Id.*

Plaintiffs take issue with Judge Barbour's holding on only the third element, wherein he found that

> [a]lthough it is clear that the Mitchells knew that the foreclosure proceeding had commencement [sic], which was the "event" that caused the cancellation and forced-placement of insurance, the Mitchells did not disclose any potential breach of contract, bad faith, or fraud claim with respect to their mortgage at the time they filed the petition for relief in Mitchell I in January of 2012, or before that case was dismissed in September of 2014.

September 26, 2018 Order [111] at 5.

Plaintiffs do not contest that they knew of Defendants' actions before Mitchell I, they just suggest that they did not know "that there was an actionable cause against the Defendants" until they spoke with their present attorney after Mitchell I had been dismissed. Pls.' Mem. [121] at 3. But the Fifth Circuit foreclosed that argument in *Jethroe*. 412 F.3d at 601 (holding that to prove

4

inadvertent disclosure a plaintiff/debtor "must not show that she was unaware that she had a duty to disclose her claims but that, at the time she filed her bankruptcy petition, she was unaware of the facts giving rise to them") (citing *In re Coastal Plains, Inc.*, 179 F.3d at 211–12). Plaintiffs therefore remain judicially estopped from bringing the claims they failed to disclose in Mitchell I.

That said, Plaintiffs are correct that the estopped claims cannot remain property of the Mitchell I estate but are instead property of the Mitchell II estate. Title 11 U.S.C. § 349(a)(3) provides that "[u]nless the court . . . orders otherwise, a dismissal of a case . . . revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case." The order dismissing Mitchell I did not "order otherwise." *Id.* Thus, the estopped claims that were property of the Mitchell I estate revested when that case was dismissed and then became part of the Mitchell II estate. Plaintiffs themselves remain estopped from pursuing those claims. *See Jethroe*, 412 F.3d at 599–600 (holding claims judicially estopped after bankruptcy court confirmed debtor's Chapter 13 plan and petition was later dismissed). But it appears that the bankruptcy estate—more specifically, the bankruptcy trustee—could pursue them. *See Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 387 (5th Cir. 2008) (holding bankruptcy trustee should be able to pursue a claim on behalf of the creditors that the debtor himself would be judicially estopped from pursuing).[2]

That leaves questions regarding the fraud claim. Defendants took the position in their summary-judgment motion that Judge Barbour dismissed all fraud claims. *See* Defs.' Mem. [115] at 2. But Judge Barbour never said the fraud claims were dismissed. He held instead that

---

[2] If Defendants contend that the estate, through the trustee, is likewise estopped, they will need to address that specific issue.

they remained a part of the Mitchell I estate and that Plaintiffs could not pursue them. Sept. 26, 2018 Order [111] at 2. During the status conference, the Court asked the parties to address whether Plaintiffs should be estopped from pursuing all fraud claims or just the claims as they relate to acts committed before Mitchell I was dismissed. Specifically, the Court questioned whether the fraud claims reflect a continuing tort or series of independent torts and whether that distinction impacts estoppel regarding the letters sent after the Mitchell I dismissal. Defendants failed to address this in their response. This issue remains an open question, and the Court reserves its right to rule on it later.[3]

Finally, Defendants raise new, dispositive arguments in their supplemental response that the Court will not address at this juncture. Specifically, they say Judge Barbour's estoppel ruling did not go far enough and should have precluded all claims. *See* Defs.' Resp. [126] at 5. They also assert res judicata as to issues confirmed in the Mitchell II plan. *Id.* at 8. But "[a] response to a motion may not include a counter-motion in the same document." *See* L.U. Civ. R. 7(b)(3)(C). These arguments should have been raised in a separate motion for reconsideration or in a motion for summary judgment.

III.    Defendants' Motion for Summary Judgment

Defendants argued in their summary-judgment brief that Judge Barbour dismissed the estopped fraud and breach-of-contract claims. Defs.' Mem. [115] at 2. They therefore skipped those claims in their analysis. But as explained above, the Court has altered Judge Barbour's

---

[3] This is not the only open question. During the status conference, the Court raised other issues that still need resolution. For example, will the Mitchell II trustee make an appearance in this case? Similarly, if Plaintiffs pursue claims for the Mitchell II estate that they are personally estopped from prosecuting, what happens if the recovery exceeds their debt to the creditors or is received after their debts are otherwise satisfied? At some point, the Court may need to hear from the parties on these issues.

Order to include the judicially estopped claims in the current bankruptcy estate. Defendants therefore need to address those claims in a more substantive way. In addition, Defendants have raised new, dispositive arguments in their supplemental response that should have been raised in a motion, not a response memorandum. For these reasons, the Court will terminate Defendants' pending summary-judgment motion and will adopt a new briefing schedule.

IV.     Conclusion

The Court has considered all arguments raised; those not addressed would not have changed the outcome. For the reasons stated, Plaintiffs' motion [120] is granted in part and denied in part, and Defendants' motion [114] is terminated and a new briefing schedule is adopted as follows: all dispositive motions must be filed within 21 days of this Order. Responses and replies will be due consistent with the Court's uniform local rules.

**SO ORDERED AND ADJUDGED** this the 2nd day of July, 2019.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE